UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SARAH Z.,

    Plaintiff,

    v.

MENLO PARK CITY SCHOOL DISTRICT,

    Defendant.
_____/

No. C 06-4098 PJH

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Defendant Menlo Park City School District's ("defendant") Motion for Summary Judgment came on for hearing on May 23, 2007. Timothy Walton appeared for plaintiff Sarah Z. ("plaintiff"); John Nibbelin appeared for defendant. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS defendant's motion for the following reasons and for the reasons stated at the hearing.

**BACKGROUND**

This cases arises under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1415. Plaintiff filed her original complaint on June 30, 2006 and amended her complaint on April 5, 2007. In the first cause of action, plaintiff alleges that defendant deprived her of "free appropriate public education" ("FAPE") under the IDEA by: (1) failing to provide progress reports and report cards during the second and third terms of the 2004-2005 school year, when plaintiff was an eighth grader at the Hillview Middle School in Menlo Park; (2) failing to implement behavior support services from March 2005-June 2005 as required by plaintiff's individualized education program ("IEP"); (3) failing to have a speech therapist present at plaintiff's November 4, 2004 IEP meeting; (4) failing to provide speech

therapy after that meeting; and (5) refusing to provide tutoring services.  She further alleges violations of the IDEA on the basis that defendant: (1) violated her rights by denying procedural due process; (2) violated her rights by failing to implement behavior support services from March 2005-June 2005 as required by her IEP; (3) violated her rights by failing to provide timely progress reports; and (4) violated her rights by failing to provide her with a diploma or otherwise allow her to graduate.  Plaintiff alleges in the second cause of action that defendant violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 on the basis that defendant (1) discriminated against her due to her disabling condition; and (2) retaliated against her for asserting her rights under the law by forcing her to sit facing a wall or a window without justification.  Finally, plaintiff alleges breach of contract in the third cause of action, wherein she asserts defendant breached a December 9, 2004 mediation agreement by not offering plaintiff additional time to take tests or the opportunity to retake tests.

  A. Statutory Background

The IDEA guarantees all disabled children a "free and appropriate public education that emphasizes special education and related services designed to meet their unique needs."  20 U.S.C. § 1400(d).  Free and appropriate public education means "special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the [IEP]." 20 U.S.C. § 1401(9).  An IEP is "a written statement for each child with a disability that is developed, reviewed and revised in accordance with [20 U.S.C. § 1414(d)]" that includes, among other things, "a statement of the child's present levels of academic achievement and functional performance," "a statement of measurable annual goals, including academic and functional goals," "a description of how the child's progress toward meeting the annual goals . . . will be measured and when periodic reports on the progress the child is making

toward meeting the annual goals . . . will be provided," and "a statement of the special education and related services . . . to be provided to the child." 20 U.S.C. § 1414(d).  An IEP must be in effect "for each child with a disability in the agency's jurisdiction." 20 U.S.C. § 1414(c)(2)(A).

B.   Factual Background

During the 2004-2005 academic year, plaintiff was an eighth grader at Hillview Middle School.  Prior to that year, plaintiff had been identified as having speech-language impairment, and pursuant to the IDEA, defendant and plaintiff's parents developed an IEP for her.  This IEP provided, among other things, for three hours per week of behavioral support services and thirty minutes per month of speech therapy.  Both services were provided on a consulting basis.

Until March 2005, behavior support consultation services listed in plaintiff's IEP were provided by Frank Marone, who had an individual service agreement with defendant.  The defendant decided not to renew that contract which was set to expire in March 2005.  On March 17, 2005, defendant hired Method Management Consultants ("Method Management").  Dr. Marone last provided services for plaintiff on March 3, 2005.  Method Management began providing her services on March 17, 2005, and provided her a total of 65.75 hours of behavioral services through the end of the 2004-2005 school year.  These services averaged 4.38 hours per week from March 7, 2005 through June 17, 2005, although plaintiff's IEP mandated only 3 hours per week of services for this period.

During the 2004-2005 school year, defendant withheld plaintiff's report card for the second and third trimesters.  Defendant did so after notifying plaintiff's parents that plaintiff had lost a textbook and had defaced a textbook, and that defendant would withhold report cards pursuant to school policy until the textbooks were paid for.  Plaintiffs parents did not pay for the textbooks.

Plaintiff's IEP provided that her parents would be informed of her progress on special education goals and objectives on a trimesterly basis during 2004-2005.  Those

3

1  goals and objectives were "to improve the quality of homework completion" and "to improve
2  test corrections." Plaintiff's resource teacher mailed her progress reports for the first and
3  second trimesters. He does not specifically remember mailing the third trimester report, but
4  it was his custom to do so. In addition, her CORE and science teachers sent her parents
5  bi-weekly reports by e-mail regarding her progress on homework and testing. Her math
6  teacher sent e-mail reports 5-10 times each trimester regarding plaintiff's homework
7  completion. Plaintiff's mother did not receive the "progress reports from teachers during
8  the second and third trimesters that other students' parents received."

9  On November 4, 2004, plaintiff's IEP team met to discuss plaintiff's academic
10 progress. The speech therapist did not attend. Plaintiff's IEP team agreed that a resource
11 specialist would be better suited to provide the case management services than the speech
12 therapist. Defendant claims that no one objected to discontinuing plaintiff's speech
13 language consultation services. Plaintiff's mother, however, claims she requested tutoring
14 services at the meeting, expressed disagreement with the proposal to eliminate speech
15 therapy, and informed the school that the speech therapist had to be present to discontinue
16 speech therapy services in accordance with the law. Speech therapy consultation services
17 for thirty minutes per month were terminated, and resource specialist services for thirty
18 minutes per week were added to plaintiff's IEP.

19 On December 9, 2004, defendant and plaintiff's parents entered into a final
20 mediation agreement to resolve a dispute pending before the California Special Education
21 Hearing Office. Pursuant to that agreement, plaintiff's IEP was amended to provide that
22 plaintiff would be given special seating, additional time to complete testing in certain
23 subjects, and the ability to retake a test if she earned a D or lower on a test.

24 On May 12, 2005, at the annual IEP team meeting, plaintiff's IEP team agreed that
25 test retakes should be discontinued because they were not helping plaintiff. Plaintiff's
26 behavioral support providers, resource specialist, and each of plaintiff's teachers attended
27 the meeting. Plaintiff's mother did not attend the meeting, although she was provided with
28

4

1  timely notice of the meeting.  Plaintiff's mother claims she told the school that she would
2  not attend the IEP meeting unless the speech therapist was planning to attend to explain
3  why the speech services needed to end.  Plaintiff's IEP was amended to discontinue the
4  test retake provision.

5        Plaintiff's mother states that plaintiff told her that her science teacher forced her to
6  sit facing a wall once and facing a window once after the district entered into the mediated
7  agreement.  All of plaintiff's teachers deny doing so.  None of plaintiff's teachers were
8  aware of whether plaintiff's parents filed complaints regarding plaintiff's treatment at school.

9        Plaintiff proceeded to high school after eighth grade.  However, she did not receive
10 an eighth grade diploma or participate in graduation due to her grades.

11     C.     Administrative Proceedings

12       Prior to filing the instant action, plaintiff raised four issues in a due process hearing
13 conducted pursuant to the IDEA before the Special Education Division of the California
14 Office of Administrative Hearings ("OAH"):  (1) failure to provide progress reports and
15 report cards during the second and third terms of the 2004-2005 school year; (2) failure to
16 provide behavior support services from March 2005-June 2005 as required by plaintiff's
17 IEP; (3) failure to have a speech therapist present at plaintiff's November 4, 2004 IEP
18 meeting; and (4) whether plaintiff is entitled to relief.  The OAH administrative law judge
19 ("ALJ") resolved all issues in the defendant's favor, after a two day hearing in which thirteen
20 witnesses testified.  Specifically, the ALJ found that the District provided plaintiff's parents
21 with all progress reports required under the IDEA, that the brief gap between termination of
22 Dr. Marone's behavioral support services and initiation of services by Method Management
23 did not deny plaintiff a FAPE, and that the absence of a speech therapist at the November
24 4, 2004 IEP, while a procedural violation of the IDEA, did not deny plaintiff a FAPE, given
25 that the goals and objectives of plaintiff's IEP were not related to speech services.
26 ///
27 ///
28

5

**DISCUSSION**

A.     Legal Standards

Summary Judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A district court may review state administrative decisions under the IDEA by means of a motion for summary judgment.  Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 891-92 (9th Cir. 1995).  Nevertheless, because a summary judgment motion in a case challenging a decision by a state educational agency is "in substance an appeal from an administrative decision," it will not "fit well into any pigeonhole of the Federal Rules of Civil Procedure."  Id. at 892.

Under the hybrid standard applied by the Ninth Circuit, district courts must apply the preponderance of the evidence standard while looking at the record as a whole and any additional relevant evidence submitted by the parties.  Id.; see 20 U.S.C. § 1415(i)(2)(B) (the court "shall receive the records of the administrative proceedings" and "hear additional evidence at the request of a party" and "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.").  The court should review the administrative decision for clear error when reviewing factual determinations, but should review de novo the ultimate determination of the appropriateness of the educational program.  See Wartenberg, 59 F.3d at 891.

The district court's role in making these determinations is limited.  "[T]he provision that a reviewing court base its decision on a 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."  Bd. of Educ. v. Rowley, 458 U.S. 177, 206 (1982).  Rather, the court is required to give "due weight" to the findings of the state administrative proceeding.  Id.  In addition, "the party challenging the Hearing Officer's decision bears the burden of persuasion."  G.W. v. New Haven Unif. Sch. Dist., 2006 WL 2237749 at *1 (N.D. Cal. 2006) (citing Clyde K. v. Puyallup Sch. Dist. No. 3, 35 F.3d 1396,

1399 (9th Cir. 1994).

B.  Defendant's Motion

Defendant argues that the court should dismiss the majority of plaintiff's claims because plaintiff failed to exhaust her administrative remedies as to those claims. Specifically, defendant argues that plaintiff failed to exhaust her claims under the Rehabilitation Act, her breach of contract claim, and her claims regarding defendant's alleged failure to provide a speech therapist and tutoring services. Defendant also maintains that these claims, as well as the claims plaintiff did exhaust administratively, fail on the merits.

1.  Unexhausted Claims

The IDEA confers on disabled children and their parents the right to have complaints resolved at a full adversary hearing before an impartial hearing officer under the auspices of the relevant state or local educational agency. Witte by Witte v. Clark County Sch. Dist., 197 F.3d 1271, 1274 (9th Cir. 1999). The IDEA permits aggrieved parties who are dissatisfied with the outcome of the administrative process to "bring a civil action with respect to the complaint presented [to the agency]," either in state court or in federal district court. Id. (citing 20 U.S.C. § 1415(i)(2)(A)).

"The IDEA requires a plaintiff to exhaust his or her administrative remedies before commencing suit if that person is 'seeking relief that is also available under' the IDEA." Robb v. Bethel Sch. Dist. # 403, 308 F.3d 1047, 1049 (9th Cir. 2002) (citing 20 U.S.C. § 1415(l)). This is true where requested relief includes money damages. Id. at 1050. "The dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required. If not, the claim necessarily falls outside the IDEA's scope, and exhaustion is unnecessary. Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem." Id. "If a plaintiff is

required to exhaust administrative remedies, but fails to, federal courts are without jurisdiction to hear the plaintiff's claim." Witte by Witte, 197 F.3d at 1274.

At the prehearing conference before the ALJ, plaintiff's mother agreed there were four issues for hearing: (1) failing to provide progress reports and report cards during the second and third terms of the 2004-2005 school year; (2) failing to provide behavior support services from March 2005-June 2005 as required by plaintiff's IEP; (3) failing to have a speech therapist present at plaintiff's November 4, 2004 IEP meeting; and (4) whether plaintiff is entitled to relief.  These four issues were reiterated prior to taking testimony at the hearing, and again in the ALJ's decision.  The court, therefore, lacks jurisdiction to hear the following claims which plaintiff did not raise before the ALJ.

          a)      Speech therapy and tutoring services

Plaintiff alleges here that she was denied a FAPE because defendant did not provide speech therapy services after November 2004 or tutoring services.  Plaintiff, however, did not argue that the defendant denied her a FAPE by not offering such services before the ALJ.  Whether plaintiff should have been offered or needed tutoring or speech language services in order to receive a FAPE are issues that must be administratively exhausted before the district court can review them. See, e.g., Hoeft v. Tucson Unified School Dist., 967 F.2d 1298, 1303 (9th Cir. 1992) ("Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children."). Because plaintiff failed to exhaust this issue, the court lacks subject matter jurisdiction to decide it.

While the ALJ did consider the procedural issue of whether her speech therapist was required to attend an IEP meeting, this issue is separate and distinct from the substantive question of whether speech therapy and tutoring services were required in order for plaintiff

to receive a FAPE, an issue the ALJ did not consider.[1]

           b)       Denial of procedural due process in violation of the IDEA

Plaintiff alleges a broad procedural due process claim for violation of the IDEA. Plaintiff, however, has only exhausted the alleged procedural violations of the IDEA she raised before the ALJ. This claim, therefore, is not exhausted to the extent it encompasses procedural violations other than the speech therapist's failure to attend the IEP meeting or the other issues explicitly addressed by the ALJ. See Robb, 308 F.3d at 1049.

           c)       Failure to provide diploma

Plaintiff maintains that the school violated the IDEA by failing to provide her with a diploma or to allow her to graduate from middle school. Plaintiff never raised this issue at the due process hearing, and this claim is therefore not exhausted. See Robb, 308 F.3d at 1049.

           d)       Violations of the Rehabilitation Act

At the hearing, plaintiff's counsel conceded that plaintiff failed to exhaust her claims under section 504 of the Rehabilitation Act, 29 U.S.C. § 794.[2] As plaintiff concedes, both her claims for denial of access to services and for retaliation under the Rehabilitation Act had to be administratively exhausted. See, e.g., S.M. v. West Contra Costa County Unified Sch. Dist., No. C 06-6653 CW, 2007 U.S. Dist. LEXIS 5280 (N.D. Cal. 2007) (The IDEA's exhaustion requirement "applies to causes of action based on the IDEA as well as causes of actions based on other federal statutes, such as the ADA or section 1983." The "Ninth

---

[1] Nor does plaintiff offer evidence to the court that she in fact required tutoring or speech therapy in order to receive a FAPE.

[2] To make out a prima facie case for discrimination under section 504 of the Rehabilitation Act, plaintiff must show that she is disabled, that she is otherwise qualified to participate in a given activity and meets the essential eligibility requirements of the school, was dismissed solely because of her disability, and that defendant received federal funding or is a public entity. Wong v. Regents of the Univ. of Cal., 192 F.3d 807, 816 (9th Cir. 1999). To establish a prima facie case of retaliation under section 504, plaintiff must show that: (1) she engaged in a protected activity; (2) defendant knew she was involved in the protected activity; (3) an adverse action was taken against her; and (4) a causal connection exists between the protected activity and the adverse action. Alex G. v. Bd. of Trs., 387 F. Supp. 2d 1119, 1128 (E.D. Cal. 2005).

1  Circuit has held 'that when a plaintiff has alleged injuries that could be redressed to any
2  degree by the IDEA's administrative procedures and remedies, exhaustion of those
3  remedies is required.'") (quoting Robb, 308 F.3d at 1049).

4  Plaintiff's allegation that she was denied equal access to defendant's programs
5  certainly could have been considered by the ALJ.  Plaintiff's retaliation claim similarly
6  relates to educational placements and services and requires exhaustion.  See 20 U.S.C. §
7  1415(b)(6) (this complaint provision of the IDEA affords the "opportunity to present
8  complaints with respect to any matter relating to the identification, evaluation, or
9  educational placement of the child, or the provision of a [FAPE] to such child"); see also
10 M.T.V. v. Dekalb County Sch. Dist., 446 F.3d 1153, 1158 (11th Cir. 2006) ("whether claims
11 asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section
12 504, or the Constitution, they must first be exhausted in state administrative proceedings").

### e) Breach of contract

On December 9, 2004, plaintiff and defendants entered into a final mediation agreement, which stated that "Sarah's IEP will be amended to include" certain accommodations, including "additional time to complete testing in Math, Science, and Core subjects" and the "opportunity within a week to retake test[s]" for those subjects in which plaintiff earned a D or F.  Plaintiff's teachers all declare that they complied with the test retake provision as long as it was part of plaintiff's IEP.  Defendant, however, concedes that at plaintiff's annual IEP team meeting on May 12, 2005, her IEP team agreed that plaintiff's test retakes should be discontinued because they had not assisted her in improving her grades.

The mediation agreement provided that plaintiff's IEP would be amended to include certain provisions.  Those provisions were implemented.  Then, six months later, plaintiff's IEP team amended her IEP to remove the test retake provision, which apparently was not helping plaintiff.  This amendment does not breach the express terms of the contract, as the contract does not prohibit amendment of the IEP.  The breach of contract claim is

10

essentially a claim that plaintiff's IEP was improperly amended at the May 12, 2005 IEP meeting. This claim, therefore, should have been raised before the ALJ, because it relates to plaintiff's special education services. See Robb, 308 F.3d at 1049. Plaintiff has not exhausted this claim, and the court lacks jurisdiction to hear it.

In addition, even if plaintiff were not required to exhaust this claim, she introduces no facts to show that the test retake provision was helping her or that she was harmed by the removal of that provision from her IEP. Without evidence of damages, her claim fails for this additional reason. See Lortz v. Connell, 273 Cal. App. 2d 286, 290 (1969) (damages are essential element of breach of contract claim).[3]

### 2. Exhausted Claims

Plaintiff's complaint also alleges that defendant: (1) denied her a FAPE and deprived her other IDEA rights by failing to provide her with behavioral support services as required by her IEP; (2) denied her a FAPE and deprived her of other IDEA rights by failing to provide her with progress reports and timely progress reports; (3) denied her a FAPE by failing to provide her with report cards; and (4) failed to provide her a FAPE because the speech therapist did not attend the November 4, 2004 IEP meeting. The ALJ denied plaintiff relief on all of these issues. Giving "due weight" to the hearing officer's report, reviewing the parties' additional evidence (including plaintiff's mother's declaration), and making an "independent judgment that a preponderance of the evidence supported the hearing officer's findings and conclusions," the court finds that defendant did not violate the IDEA. See Wartenberg, 59 F.3d at 892.

#### a) Behavioral support services

"[W]hen a school district does not perform exactly as called for by the IEP, the district does not violate the IDEA unless it is shown to have materially failed to implement

---

[3] As for plaintiff's claim regarding breach of the provision allowing extra test-taking time, all of plaintiff's teachers state they provided her with extra time to take tests. Even if this claim were exhausted, which it is not, plaintiff's mother's statement that "Sarah's teachers nevertheless failed to allow extra time for exams" is conclusory and lacks foundation and basis for personal knowledge.

11

1  the child's IEP.  A material failure occurs when the services provided to a disabled child fall
2  significantly short of those required by the IEP." Van Duyn ex rel. Van Duyn v. Baker
3  School Dist., 481 F.3d 770, 773 (9th Cir. 2007).

4        Here, the undisputed facts are that defendant did not renew Dr. Marone's service
5  contract with the school because of concerns regarding his performance.[4]  Plaintiff's
6  parents were informed that the services Dr. Marone had been providing for plaintiff would
7  be provided by Method Management.  Dr. Marone's last services occurred on March 3,
8  2005.  Method management began providing consultation services on March 17, 2005.
9  While consulting services provided in March were a little below the amount provided for in
10 plaintiff's IEP, the services were in full-swing in April, and the hours of services per week
11 from March 2005 through June 2005 averaged over 4 hours per week, as opposed to the 3
12 hours per week mandated by plaintiff's IEP.

13       The ALJ found this error was harmless, due to the short period of missed behavioral
14 consultation time and the fact that plaintiff was being closely monitored by her teachers and
15 counselor.  Plaintiff has submitted no evidence that the brief gap in her behavioral services
16 in March 2005 resulted in a material failure in implementation of her IEP. See Clyde K. V.
17 Puyallup School Dist. No. 3, 35 F.3d 1396, 1399 (9th Cir. 1994) (party challenging hearing
18 officer's decision bears burden of persuasion).  This brief gap in services did not result in
19 the denial of a FAPE for plaintiff or otherwise violate the IDEA.

          b)      Progress reports and report cards

21      There is no disputed evidence about provision of plaintiff's IDEA mandated progress
22 reports.  Plaintiff's IEP provided that her parents would be informed of her progress on
23 special education goals and objectives on a trimesterly basis during 2004-2005.  Those
24 goals were "to improve the quality of homework completion" and "to improve test
25 corrections."  All plaintiff's mother states is that during the second and third trimesters, she

---

[4] Marone himself speculates that his termination was due to issues of "personalities" mentioning that his relationship with school personnel seemed to develop some "fractures."

12

did not receive the progress reports "from teachers . . . that other students' parents received". But defendant has submitted evidence that plaintiff's resource teacher mailed plaintiff progress reports at the end of each trimester of the 2004-2005 school year. He has a clear recollection of having sent the report at the end of the first and second trimesters. He does not have a specific recollection of having done so at the end of the third trimester, but it was his custom to do so. In addition, plaintiff's eighth grade CORE subject teacher and science teacher each sent plaintiff's parents bi-weekly reports specifically addressing whether plaintiff was completing her class work, whether she was receiving low test scores, whether her work was satisfactory, and whether she needed to make up tests. Her math teacher similarly sent reports five to ten times each trimester regarding homework completion.

Plaintiff's mother's vague declaration that she did not receive reports that "other students' parents received" does not establish that plaintiff did not receive the reports described in her IEP. It is not clear what reports "other students received", which students this statement refers to, which teachers' reports this statement refers to, or whether other students' IEP's required the same type of reports.

As for report cards, the parties agree that defendant withheld plaintiff's report card after the second and third trimesters of the 2004-2005 school year. Defendant informed plaintiff's parents several times that plaintiff had missing and damaged textbooks. Defendant informed plaintiff's parents that it was the school's policy to withhold report cards in such circumstances until the textbooks were paid for. This in fact, was the school's policy. Plaintiff's responses to defendant's request for admissions concede this. Plaintiff's parents would not pay for the textbooks. Plaintiff's mother declares that various employees of the school district were unable to explain which books were lost or damaged and that they made conflicting statements about the books. Providing report cards, however, is not controlled by the IDEA. The IDEA requires that the IEP document contain a description of "when periodic reports on the progress the child is making toward meeting the [student's]

13

annual goals . . . will be provided." 34 C.F.R. § 300.320(a)(3)(ii). As discussed above, defendant provided plaintiff with progress reports. Plaintiff's teachers also sent plaintiff mid-trimester grade reports during the 2004-2005 school year. Defendant is therefore entitled to summary judgment on these issues.

c)  Speech therapist attendance at IEP meeting

The ALJ found that defendant's failure to have a speech language therapist present at plaintiff's November 4, 2004 IEP meeting was harmless error. IDEA procedural errors are subject to harmless error analysis and constitute denial of a FAPE only where they "resulted in a loss of educational opportunity or significantly restricted parental participation in the IEP formation." Virginia S. v. Dep't of Educ., 2007 U.S. Dist. LEXIS 1518 (D. Haw. 2007) (citing M.L. v. Federal Way Sch. Dist., 394 F.3d 634, 652 (9th Cir. 2005) (Gould, J., concurring in part and concurring in the judgment[5]). See also 20 U.S.C. § 1415(f)(3)(E)(ii) ("In matters alleging a procedural violation, a hearing officer may find that a child did not receive a [FAPE] only if the procedural inadequacies . . . impeded the child's right to a free appropriate public education; significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or . . . caused a deprivation of educational benefits."). "[E]rror in composition of an IEP team" is not always prejudicial nor does it always result in denial of a FAPE. M.L., 394 F.3d at 656.

Plaintiff's special education goals in her IEP prior to the November 4, 2004 IEP meeting were "to improve the quality of homework completion" and "to improve test corrections." The IEP provided for 30 minutes per month of speech therapy consultation service from a district specialist. At that November meeting, speech therapy services were removed from plaintiff's IEP, and 30 minutes per week of services from plaintiff's resource teacher to help plaintiff function in a general education setting and understand the

---

[5] In M.L. v. Federal Way School District, the majority of the panel adopted a harmless error analysis. See id. at 650 n.9.

14

curriculum (among other things) were added to the IEP. Plaintiff's level of services increased fourfold after that IEP meeting. Michael Dunn (special education specialist), assistant principal Joy Shmueli, plaintiff's core teacher, plaintiff's mother, and Frank Marone attended the meeting. The evidence shows that plaintiff's resource teacher was better suited to help plaintiff meet her IEP goals, which were unrelated to speech therapy. The ALJ also found that Ms. Jo Camper, the speech therapist, was in agreement to exit plaintiff from speech services. See ALJ Op. at 4 ¶ 11. Plaintiff has not disputed this finding. Nor has plaintiff submitted evidence that her speech therapy provided her with an educational benefit. Therefore, there is not a "strong likelihood that [educational] opportunities" for plaintiff "would have been better considered" had the speech therapist attended the IEP meeting, given that speech therapy was not identified as one of plaintiff's educational goals, other special education specialists who had more contact with plaintiff were at the meeting, and the speech therapist apparently told the ALJ that she was in agreement to exit plaintiff from speech services. See M.L., 394 F.3d at 657.

Nor is there any evidence (or argument) that the absence of the speech therapist significantly restricted parental participation. To the contrary, plaintiff's mother attended that November IEP meeting. Summary judgment on this issue is proper.

**CONCLUSION**

In accordance with the foregoing, the court GRANTS defendant's motion. This order terminates the case and any pending motions. The clerk shall close the file.

IT IS SO ORDERED.

Dated: May 30, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge